# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OMAR LYONS,** | ) | |
| Plaintiff, | ) | Civil Action No. 09-273Erie |
| | ) | |
| v. | ) | |
| | ) | |
| **DENNIS OLSON, et al,** | ) | Magistrate Judge Susan Paradise Baxter |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

Magistrate Judge Susan Paradise Baxter

### A. Relevant Procedural History

Plaintiff, a federal inmate acting pro se, filed the instant civil rights action on October 29, 2009. Plaintiff alleges that Defendants violated his constitutional rights pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). As Defendants to this action, Plaintiff names Dr. Dennis Olson, the Clinical Director of FCI-McKean; Eric Asp, Physician's Assistant at FCI-McKean; Dr. Marcos Ramirez at the United States Penitentiary at Hazleton, West Virginia; and Harold Boyles, Health Services Administrator of USP-Hazelton. Plaintiff claims that these Defendants violated his Eighth Amendment rights by subjecting him to deliberately indifferent medical care. As relief, Plaintiff seeks monetary damages. ECF No. 3.[2]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 4, 35.

[2] The nineteenth edition to The Bluebook: A Uniform System of Citation (Columbia Law Review Ass'n, et al. eds., 19th ed. 2010) provides citation form for court documents filed with the Electronic Case Management system of the federal courts. Rule B7.1.4. Although The Bluebook advises pinpoint citation to a document's original page number, this Court finds its

1

Plaintiff organizes his complaint into two separate Counts: Count I is against Defendants Ramirez and Boyles for incidents that allegedly occurred at USP-Hazelton from January 17, 2007 through August 29, 2007, and Count II is brought against Defendants Olson and Asp for incidents that allegedly occurred at FCI-McKean from August 29, 2007 through August 6, 2008.

In response to the Complaint, Defendants have filed a motion to dismiss/motion for summary judgment. ECF No. 28. Plaintiff has filed a "Motion for More Definite Statement to his Complaint" clarifying that he is pursuing his claims against Defendants in their individual capacities only. ECF No. 32. In opposition to Defendants' pending dispositive motions, Plaintiff has filed a "Motion to Strike" [ECF No. 34] and a "Motion to Amend/Correct Complaint for Damages and Permissive Joinder of Parties" [ECF No. 41].

### B. Standards of Review

#### 1) Pro Se Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading

---

practice of citing to the page number contained in the PACER header more efficient and will continue its prior practice of citing to that page number herein.

rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2) Motion to dismiss pursuant to 12(b)(1)

A defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) citing Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.3d 884, 891 (3d Cir. 1977). In reviewing a facial attack, which addresses a deficiency in the pleadings, the court must only consider the allegations on the face of the complaint, taken as true, and any documents referenced in the complaint, viewed in the light most favorable to the plaintiff. Id.; Turicentro, S.A. v. American Airlines, Inc., 303 F.3d 293, 300 (3d Cir. 2002). "The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 ((8th Cir. 2007) citing Bell Atlantic v. Twombly, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 1964-66 (2007).

But when a 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, "we are not confined to the allegations in the complaint and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 754 (3d Cir. 2000). In reviewing a factual attack, "the Court is free to weigh the evidence and satisfy

3

itself either it has power to hear the case ... [N]o presumptive truthfulness attaches to plaintiff's allegations." Carpet Group Int'l. v. Oriental Rug Importers Ass'n., 227 F.3d 62, 69 (3d Cir. 2000). The party asserting subject matter jurisdiction bears the burden of proving that it exists. Id.; cf Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007) ("On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").

### 3) **Motion to dismiss pursuant to 12(b)(6)**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also

4

McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit subsequently expounded on the Twombly/Iqbal/Phillips line of cases:

> To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.'
>
> * * *
>
> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to 'show' such an entitlement with its facts. As the Supreme

5

> Court instructed in Iqbal, '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.' This 'plausibility' requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11(3d Cir. 2009) (emphasis added) (internal citations omitted).

### 4) Motion for summary judgment pursuant to Fed.R.Civ.P. 56

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed. R. Civ. P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d

458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

**C. Statute of limitations**

Defendants move for the dismissal of some of Plaintiff's claims based upon the time-bar of the statute of limitations.

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations. Wilson v. Garcia, 471 U.S. 261, 266 (1985) (later overruled only as to claims under the Security Exchange Act of 1934). Here, this Court must look to both the state laws of Pennsylvania and West Virginia. In Pennsylvania, the statute of limitations is two years from the date of the alleged violation. See Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. (Pa.) 2003); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir.(Pa.) 1996). In West Virginia, the state's Medical Professional Liability Act provides for a two year statute of limitations which begins to run from either the date of the injury, within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever occurs last. See Legg v. Rashid, 222 W.Va. 169 (2008).

The date upon which a § 1983 claim accrues is a matter of federal law. Albright v. Oliver, 510 U.S. 266, 280 n.6 (1994). A claim accrues when the litigant knew or had reason to know of the injury. Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir.1998). Thus, the date when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the defendant, triggers the limitations period. See Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the limitations period). In his complaint, Plaintiff alleges that he knew that Defendants Ramirez and Boyle had allegedly injured him at least as early as March 13, 2007. ECF No. 3, Complaint, ¶ 5(d).

This case was filed on October 29, 2009, so in order to be timely filed, all claims must have occurred after October 28, 2007. All claims before that date are barred by the statute of limitations. Here, Plaintiff was transferred away from USP-Hazelton (and was no longer under the care of Defendants Ramirez and Boyles) as of May 25, 2007. Therefore, all claims against Defendants Ramirez and Boyles are time-barred and they will be dismissed from this action.

Additionally, all claims against the FCI-McKean Defendants that allegedly occurred from May 25, 2007 through October 28, 2007, are time-barred and must be dismissed from this action.

### D. Deliberate indifference

Plaintiff entered into the custody of the Bureau of Prisons in 2005 with significant damage to his right lower extremity from multiple gunshot wounds. According to Plaintiff, prior to his incarceration, the gunshot wounds required a fasciotomy, the placement of a rod in his leg, and then an external fixator after he developed a non-union. After the external fixator was removed, Plaintiff developed a tibial non-union which necessitated a non-union takedown, open reduction internal fixation ("ORIF") surgery in September of 2002. Later, Plaintiff underwent some type of reconstructive surgery to remedy his "drop foot" and has had pain and numbness of the right foot and claw toes since that time.

Plaintiff alleges that Defendants Olson and Asp (of FCI-McKean) are liable to him for "denying and delaying of the proper treatment causing wanton infliction of pain and consciously choosing an easier and less efficacious plan of treatment." ECF No. 3, ¶ 8. Further, as a result of Defendants' actions, he "suffered extreme pain, constant and intense discomforts, emotional trauma, depression, endanger [sic] risks of health, and unable [sic] to perform daily activities, and amputation, all to his great damage." Id. at ¶ 7. Defendants Olson and Asp argue that they

9

are entitled to summary judgment as they did not act with deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss." Peterson v. Achebe, 2007 WL 1381753, at * 3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347. Here, Defendants do not dispute that Plaintiff's conditions qualify as "serious medical needs".[3]

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

---

[3] Defendants specifically acknowledge that Plaintiff's claw/hammer toes, osteomyelitis and MRSA infection of the right great toe qualify as "serious medical needs." ECF No. 29, page 18.

However, mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). See also White, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) citing Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). See also Powell v. Symons, 2010 WL 1485682, at * 3 (M.D. Pa. March 22, 2010).

The medical records before this Court reflect that Plaintiff entered into the custody of the Bureau of Prisons with significant damage to his right lower extremity and that both over the course of his incarceration and during the relevant time period here (from October 29, 2007 through August 6, 2008), he has received a significant amount of medical care.

By October 29, 2007, Plaintiff had already been hospitalized at the Kane Community Hospital for a few days relating to the complaints about his great right toe. A notation for that day in the prison medical records indicates the Plaintiff was doing well at the hospital, that he was receiving intravenous antibiotics, and was scheduled for a bone scan. ECF No. 29-7, page 6; ECF No. 29-8, page 45.

On October 30, 2007, Plaintiff's prison medical chart indicates that the bone scan was equivocal for osteomyelitis (a chronic bone infection) and an orthopedic consultation was ordered at the hospital. That same day, Plaintiff underwent an MRI. ECF No. 29-7, page 6.

The following day, Plaintiff's prison medical chart indicates that the orthopedic surgeon assessed Plaintiff with "suspected osteomyelitis of the distal phalanx right great toe, status post right gunshot wound with sensory nerve paresthesias involving the foot and ankle to mid-leg, previous tibial shaft nonunion with subsequent nonunion takedown and ORIF (open reduction internal fixation surgery) and hardware removal, right leg proximal fibula nonunion with displacement, and right pes cavus foot with claw toes 1 through 5." ECF No. 29-7, page 7; ECF No. 29-10, page 10.

On November 1, 2007, surgery was performed, and the presence of a bone infection required a partial amputation of Plaintiff's right great toe. ECF No. 29-7, page 7; ECF No. 29-9, page 53-54. On November 6, 2007, Plaintiff was released from the hospital and returned to FCI-McKean with prescriptions for pain medications and antibiotics. ECF No. 29-7, page7; ECF No. 29-9, page 52. According to the hospital discharge instructions, there was "potential for future problems regarding cellulitis, repeat recurrent infection and that risk based on his chronologically anatomically abnormal foot as a result of his gunshot wound." ECF No. 29-9, page 54.

Following his return to FCI-McKean, Plaintiff was placed on "convalescence status" until April 26, 2008. He was examined by medical staff daily from November 7th through 13th, and from November 15th through the 21st, as well as visits on the 23rd and the 27th. ECF No. 29-7, page 9.

On December 18, 2007, Plaintiff was a no-show for a recheck of his foot and failed to pick up his special-order shoes. ECF No. 29-7, page 10; ECF No. 29-8, page 32.

On December 21, 2007, Defendant Asp examined Plaintiff for complaints of right foot pain and noted that the amputation had completely healed and the second toe was normal in size and coloration. Asp also noted that Plaintiff's foot was the best he had seen it since Plaintiff's transfer into FCI-McKean. Plaintiff requested surgery to straighten his remaining toes. ECF No. 29-7, page 11; ECF No. 29-8, page 32.

On February 29, 2008, Plaintiff was a no-show for a recheck of his foot. ECF No. 29-7, page 11; ECF No. 29-8, page 31.

On March 5, 2008, Plaintiff reported to emergency triage complaining of leg pain and swelling. Defendant Asp observed that Plaintiff was ambulating well without any apparent pain. ECF No. 29-7, page 11; ECF No. 29-8, page 31. Plaintiff requested that his toes be straightened. Id. Defendant Asp requested on orthopedic consultation for Plaintiff on March 7, 2008. ECF No. 29-9, page 25.

On March 27, 2008, Plaintiff was a no-show for a recheck of his foot. ECF No. 29-8, page 30.

On April 15, 2008, Plaintiff was examined by Defendant Asp for an irritation of the right second toe. Defendant Asp assessed Plaintiff with contracture (a tightening of muscle, tendons, ligaments, or skin that prevents normal movement) of the toes. ECF No. 29-7, page 11; ECF No. 29-8, page 30.

On May 20, 2008, Plaintiff was transported to an examination by an outside orthopedic surgeon, Dr. Johe. Plaintiff expressed his desire to have this toes surgically straightened. ECF

No. 29-7, page 11; ECF No. 29-9, page 24-25.  On May 27, 2008, the request for surgery was referred to the Utilization Review Committee ("URC").

On June 16, 2008, Plaintiff reported to emergency triage complaining of painful callouses on his second and third toes.  Plaintiff was disgruntled and demanded immediate surgical care.  It was explained to Plaintiff that the surgical referral was pending before the URC for planning and scheduling procedures.  ECF No. 29-7, page 12; ECF No. 29-8, page 26.

On June 27, 2008, Plaintiff was a no-show for an appointment for a re-check of his foot. ECF No. 29-7, page 12; ECF No. 29-8, page 25.

On July 29, 2008, Plaintiff was transported to orthopedic surgeon Dr. Johe, who noted that Plaintiff needed "PIP resections with MP releases of his other four toes with pins in the end."  ECF No. 29-7, page 12; ECF No. 29-10, page 50.

On August 6, 2008, Dr. Johe performed the foot surgery at the Regional Ambulatory Surgical Center.  ECF No. 29-7, page 12; ECF No. 29-9, page 49.

Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment.  United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir.1977).

Plaintiff Lyons has received extensive medical care. Here, Plaintiff challenges the speed at which he received the care. Presumably, Plaintiff complains that a delay in the straightening of his four toes violates his constitutional rights. However, the medical records indicate that: 1) Plaintiff received continuous medical care during the time period at issue; and 2) any delay in treatment is at least partially due to Plaintiff's non-attendance at medical appointments. Accordingly, the motion for summary judgment will be granted in favor of Defendants.

**E. Futility of Amendment – Health Services Rodney Smith**

Plaintiff has filed a Motion to Amend the Complaint to add FCI-McKean's Health Services Administrator Rodney Smith as a Defendant to this action. The motion to amend will be denied as futile.

Federal Rule of Civil Procedure 15(a) states that "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure). An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted. In re NAHC, Inc. Securities Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Non-medical prison officials, such as Health Services Administrator Rodney Smith, are not

> considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [...] If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [...] will not be chargeable with [...] deliberate indifference [under the Eighth Amendment].

Spruill, 372 F.3d at 236, quoting Durmer, 991 F.2d at 69. See also Foreman v. Bureau of Prisons, 2007 WL 108457, at *5 (3d Cir.).

Accordingly, the motion to amend [ECF No. 41] will be denied as futile.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OMAR LYONS, | ) | |
| Plaintiff, | ) | Civil Action No. 09-273Erie |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS OLSON, et al, | ) | Magistrate Judge Susan Paradise Baxter |
| Defendants. | ) | |

O R D E R

AND NOW, this 23rd day of March, 2011;

IT IS HEREBY ORDERED that the motion to dismiss/motion for summary judgment filed by Defendants [ECF No. 28] is GRANTED. The Clerk of Courts is directed to close this case.

IT IS FURTHER ORDERED that Plaintiff's "Motion for More Definite Statement to his Complaint" clarifying that he is pursuing his claims against Defendants in their individual capacities only [ECF No. 32] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's "Motion to Strike" [ECF No. 34] is DENIED and Plaintiff's "Motion to Amend/Correct Complaint for Damages and Permissive Joinder of Parties" [ECF No. 41] is DENIED AS FUTILE.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge